24-16-53 and 24-18-08, 803 Cava vs. Jack Rabbit vs. Visa and MasterCard. Mr. Rifkin, I believe you're up first? Yes, correct, Your Honor. Whenever you're ready. Good morning. May it please the Court, Mark Rifkin for the Square Cellars. In the time allotted to me, I'd like to answer any questions the Court may have, but I'd also like to highlight three reasons why we believe the District Court's decision should be reversed. First, it is contrary to a prior decision of this Court in the Fikes Appeal to resolve an ambiguity in the settlement class definition over who accepted payment cards. This Court held in Fikes that the only entities that could fall within the Rule 23b3 class definition were those deemed to be direct payers of the challenged fees. The Court's decision in Fikes was consistent not only with federal antitrust standing under Illinois BRIC, but also with a prior 2006 holding of this Court in Denny v. Deutsche Bank that a class must be defined in such a way that everyone in it has standing. Under Fikes and Denny, to be a member of the class in this case, an entity must be a direct payer of the challenged interchange fees. Everyone interested— Well, Your Honor, do you—so there was a sentence in our opinion that said, put differently, the District Court found that the federal antitrust law clarified the only entities that could fall within the class definition were those deemed to be direct payers of the challenged fees. Is it your contention that we were saying something different from direct purchaser? No, Your Honor. I believe you said exactly the same thing, and that's our point. The direct purchaser is the direct payer. They're not different entities. But the direct purchaser isn't necessarily the direct payer if the direct purchaser has arranged for matters of convenience to have a facilitator who handles payment transactions, handles the money, execute the payment, right? Your Honor, under Supreme Court jurisprudence, beginning with Illinois brick in 1977 and continuing to its most recent pronouncement in Apple v. Pepper in 2019, the court has always said the test is who pays the money, who pays the challenged fee. So you're saying that as to the hypothetical I just put to you, that if you had a financial entity, if the purchaser in a meaningful sense, meaning the person who wanted to acquire the thing being purchased to use it in his business and resell it for a profit, if that entity arranges to have a financial facilitator be the one that handles the money and sends the payment, that that person, that entity, although it has no interest in the thing being purchased, which was the subject of the antitrust violation, is the eligible entity to receive an antitrust judgment? Your Honor, I'd like to answer your question, but your reference lost me. When you said that entity, are you referring to the original? The entity that is the mere facilitator, the mere hired facilitator, which makes the payment because it was engaged by the person who would be regarded as the – who placed the order and wanted to acquire the thing that was the subject of the antitrust judgment. I understand your Honor's question, and I think the answer is if the facilitator is paying the challenged fee, in this case the interchange fee, with funds that belong to the purchaser, the originator of the order, that would be one thing, but that's a different situation than we have here. Well, the situation we have here is that none of these people pay in the sense of sending the money because the money comes in the other direction. The money is coming back, and it comes back with the fee deducted from it. So if you're looking at a payment as being – sending the money to the seller, nobody does that. It's the seller who sends back the money minus the seller's fee, which is the subject of this antitrust suit. Correct, Your Honor, but as the court pointed out in the order that it entered in our case, and now I'm referring to page 11 of the special appendix in our appeal, footnote 16 on page 11 of the court's decision, the defendants concede for purposes of the settlement that the acquiring banks, who are the intermediary banks who facilitate these payments and whom the defendants now say are the direct payers of the fee, the direct purchasers and the direct payers of the fee, they have waived that argument for purposes of reaching the settlement. And so I think the question that Your Honor has posed is one that is foreclosed by the concession that the defendants have made. But the fundamental – I'm sorry. I didn't mean to interrupt you. I was interrupting you, actually. In Fikes, the issue was there were two merchants that were sort of, you know, kind of at the same time point of purchase. Here, I guess I'm having a hard time understanding how the pay facts are merchants. Well, the payment facilitators in our case block, also known as square, and I'll call them square just for ease. Square is a payment facilitator, but it is, in fact, not just the merchant, but it is the merchant of record for every transaction that the square sellers initiate on behalf of their customers. So a customer comes to a square seller. The square seller transmits the payment through the square network. Square is the official merchant of record for that transaction. Yeah, I appreciate that point. There's also, I think the district court pointed to the agreements between the submergents, you call them, and square, which reflect that one is the merchant and that is not how square is referred to in those agreements, right? Your Honor, I think you may be referring to the term agent that's used in those agreements. And what square is, it is the agent for collecting the money from the acquiring bank, first from the issuing bank, and then from the acquiring bank. It is the agent of the square sellers. For that very narrow, limited purpose, we've submitted with the- I guess the point is there's arguably evidence on going both ways, treating square as saying that it is maybe a merchant and submergents, or arguably two, I guess. And then on the other side, there's evidence suggesting that, no, in fact, it is more like, I think as Judge LaValle was suggesting, this is just a sort of pass-through service that the actual merchant is using. Except that, number one, that pass-through issue doesn't meet with any of the recognized exceptions to the Illinois brick standing requirement. The court has said there really are only two exceptions. One is a fixed cost plus contract, a preexisting fixed cost plus contract, which this is not, and no one has argued to the contrary. We're not talking about an exception to the Illinois brick rule. We're talking about whether it comes within the Illinois brick rule. We're not saying, oh, this is different because it's an exception. It's a question of what the Illinois brick rule means. Does the Illinois brick mean that the eligible plaintiff in the antitrust suit will be the entity which is the direct purchaser in the sense that it was the one that was acquiring the product for use in its business to resell it at a Whatever financial arrangement had been arranged for convenience to have a facilitator, that facilitator will be regarded as the direct purchaser. I don't think we're talking about it as an exception. We're talking about it as a correct understanding of the application of the Illinois brick rule. And I want to put to you a hypothetical. Supposing that you have a period of X years during which this antitrust violation has continued. And for the first several, for the first part of that period, the purchaser, the direct purchaser from the antitrust violator is just buying it itself and making the payment and just the transaction is just between the two entities, the seller and the purchaser. But then after about three years, the purchaser decides to rearrange its methods and it engages a financial entity to handle the money, to handle the inflow and the outflow of money. And suddenly it entered, that entity has been placed into the chain of money so that the, so that after, for the second years, second period of years, the payments go through this financial intermediary rather than going directly between seller and purchaser. I suppose your proposition is that if there's an antitrust judgment, it has to be broken down into parts, one part covering the first period when the purchaser and for the second period it will be the financial entity that's the facilitator. If I'm understanding your Honor's question correctly and the intermediary does nothing other than take the money from the purchaser and pass it on to the antitrust violator, I don't think the rule would be any different. Any more than, for example, when I make a payment, not by delivering a bag of and the check instructs my bank to present payment to the antitrust violator's bank and the antitrust violator's bank receives that and then credits it to the account of the antitrust violator. In that sense, there are two intermediaries between me and the antitrust violator, my bank and the antitrust violator's bank. But under Supreme Court precedent, I am the one who is the purchaser. I am the one who is the payer of the challenged fee. I am the one with antitrust standing. So respectfully, Your Honor, I do not believe that having an intermediary whose only purpose, if I understood Your Honor's hypothetical question correctly, whose only purpose is to transmit funds for the purchaser, then no, I don't think there would be a separate rule. But that's not what happened here. What happened here is square contracts with the square sellers for a basket of services. Those services include the equipment, the software, support, access to the Visa and MasterCard network through square's accounts with Visa and MasterCard through square's acquiring bank. And the square sellers have no relationship with Visa. They have no relationship with MasterCard. They have no relationship with an acquiring bank. And the only relationship they have with an issuing bank is they receive a credit card from a customer who uses the credit card or debit card to make a payment. But they don't pay the disputed fee at all. They don't buy the interchange service and they don't pay the disputed fee. Does the merchant have to be approved by Visa or MasterCard? I believe that is correct, Your Honor. So the Visa or MasterCard, in the hypothetical you're giving, approves the use of the MasterCard services by the purchaser. No, I don't believe that is correct. By the entity that's – well, I mean Visa and MasterCard have standards. I mean if I remember from a case that I had years ago about a different matter, you can't get a Visa or a MasterCard if you're an escort service. You can't get a Visa or MasterCard for prostitution businesses. There are various categories of businesses that Visa and MasterCard will not accept them as a user of Visa and MasterCard. So I assume that Visa and MasterCard have to review who it is that's getting the service of having its customers pay with payment cards. And whatever standards Visa and MasterCard may have and however they choose to enforce them, they can only enforce them against Square because Square is the only customer with whom they have a contractual relationship. They can't enforce them against the Square merchants, the Square sellers, because they have no contractual relationship with Visa and MasterCard. As far as Visa and MasterCard are concerned, the Square sellers are strangers to the transaction. And this is why, for example, Your Honors, this is why when claim forms were in 2024, when claim forms were sent to the Square sellers, unlike all the other claim forms that were sent to every other member of the class, they could not be pre-populated with information about the Square sellers' transactions because Visa and MasterCard don't have that granular detailed information. Their granular detailed information stops at Square. It doesn't go as far as the Square sellers are concerned. So unlike all the other merchants in the class, the Square sellers, when they were swept into this class, we say erroneously, when they were swept into this class in 2024 and they were given claim forms, their claim forms are different than every direct purchaser's claim form because they have no relationship with Visa and MasterCard. You listed a number of services that Square provides, but surely one of them is participating in the market for interchange services, correct? There is no doubt. You charge for that? There is no doubt that Square charges the Square sellers the fee. Am I correct then that that component of what you do together with what you charge for that, together with what everybody else charges for that, everybody is taking a bite out of it. It's the merchant that takes the hit entirely for all of the accumulated charges, all the bites that all of the intermediaries take out of the sum of money that the consumer is willing to pay for the product that the merchant is selling. Absolutely, Your Honor, and in 1977 when the Supreme Court decided Illinois BRIC, it said we are not concerned with those intermediary bites. We are giving standing to the first purchaser from the wrong group. But shouldn't it matter that the merchant initiates these transactions and at the end of the day, as it passes through all these other hands, it comes right back to the merchant, and the merchant is the only one that pays for the card handling services. And that's not the Illinois BRIC situation. No, it's precisely Illinois BRIC. In Illinois BRIC, the product passes through different hands, but the party that initiates the transaction isn't the only one that pays for it. Every party along the line pays for it in one way or another. In Illinois BRIC, the state bought a building. The building was constructed out of cement block. The cement block was purchased from a supplier who purchased it from an intermediary who bought it from the manufacturers, the defendants. And the court said we are not looking at all of those steps in the distribution chain. We're not looking at who the ultimate injury is. We're looking at the first purchaser. And the court gave a sound policy reason for doing so. It said we believe, this is the Supreme Court, we believe that concentrating standing in the first purchaser and giving the first purchaser 100 percent recovery, we don't care about a pass-through, is the best way to enforce the antitrust laws. In the Utilicorp case that we cite in our brief, the utilities were obligated by statute. They were statutorily required to pass on 100 percent of the utility costs to consumers, 100 percent, dollar for dollar, 100 percent, including the alleged overcharge as a result of the price-fixing conspiracy among the electricity suppliers. What case are you talking about? This is the Utilicorp case, Your Honor. And the court said we don't care. We don't care. We understand that the consumer bears the ultimate burden for the overcharge. And the Supreme Court has consistently, every time this issue has arisen in the Supreme Court, including most recently in Apple v. Pepper, the Supreme Court has said we follow the money. Isn't it not fair to say, though, that in Illinois at Berkeley you have a series of transactions, whereas here it's arguable that there's one transaction, that is to say a merchant wishes to sell goods to somebody who wishes to buy it on credit and has a credit card. So the single ramified transaction is that passes through all of these stages. Your Honor, I understand the question, but I think you're looking at the wrong transaction. The transaction between – This is complicated stuff. It is, and let me see if I can explain this. The transaction between the purchaser, the customer, and the square seller is – let's use a simple example. I go to one of these pop-up stores at Grand Central, and I buy a tie. And I give the merchant my credit card, and the merchant is a square merchant, and so he runs it through the square system to process the card. That transaction, my purchase of the tie, is a separate transaction from the one that is the subject of this litigation. The transaction that's the subject of the litigation is an ancillary transaction. It's a transaction having to do with my ability to use a credit card and somebody else's obligation to pay the charge. And so what happens here is not the transaction between the customer and the merchant that we need to look at, but it's the purchase and payment for payment card transaction services. They are a separate ancillary service, and the only entity that buys those services from Visa and MasterCard, the only entity, at least in my case, is square. We don't have that relationship. The defendants agree. The defendants agree that we are indirect purchasers. There's no dispute about that. They have admitted that we are indirect purchasers, and yet somehow the district court says, well, since we accept – and now this is where the court made the error – since we accept in the ordinary dictionary sense of the word and cited the Oxford English Dictionary as authority for interpreting the settlement agreement, since we accept in the sense that we take or receive a card from a customer, we are in the class. But that's not what this court said in Fikes. This court said that you must be a direct purchaser, a direct payer of the challenged fee, to be in the class. We don't pay the challenged fee at all. We pay a subscription fee to square, one component of which is no doubt the interchange fee, just like one component of the building that the state of Illinois bought in Illinois BRIC was the priced fixed cement that was incorporated in the cement block that was used to construct the building. But the Supreme Court says we're not looking behind the curtain. We stop at the first purchaser. We stop at the first payer. That's as far as we go. And in 2019, the Supreme Court said, yes, we meant that. That's the test. We don't want to invite courts to have to unscramble complicated factual scenarios such as the one, Your Honor. Thank you, counsel. I'm sorry. I wanted to ask something. You are also alleging that this should be set aside because you get notice. Correct. Would you mind if we ask to have that argument? Thank you very much, Your Honor. I want to be clear about one thing. First, we don't believe that the settlement needs to be set aside because we did not get notice. We agree that we should not have a procedure. You're saying it has to be set aside as far as your customers. Let me see if I can explain. In the first instance, we think that the fact that sophisticated counsel who told this court, told this court that they did not represent indirect purchasers like the square sellers, but the fact that sophisticated counsel did not get notice to us, the fact that a sophisticated claims administrator did not send notice to us, is indicative of the fact that no one thought we were in the settlement until Visa and MasterCard had a change of mind. The problem arises because if the court now concludes that we are, when the district court ruled that we were in the class, then under Eisen versus Carlisle or Jacqueline, we are constitutionally entitled to individual notice. The defendants have no response to that argument. In the 51 years since Eisen versus Carlisle and Jacqueline was decided in 1974, the defendants have not cited a single case in 51 years where a court has said, we will look aside at the direct notice problem because notice was published and people can read the newspaper. That's not the standard. There's no dispute that the square sellers did not receive notice. There's no dispute that Visa and MasterCard had the information available to them to identify the square sellers or could easily obtain it. And there's no dispute that they had contact information for the square sellers or could easily obtain it. Under Eisen versus Carlisle and Jacqueline, it is mandatory that we receive notice. And when the court ruled in our case that we were members of the class, the court created an Eisen versus Carlisle and Jacqueline, a due process problem that never existed and wouldn't exist if this court reverses that determination. Have I answered your question, Your Honor? Thank you, Counselor. Thank you very much. May it please the court. My name is Al Packrack. I represent Jack Rabbit. Good to be back. Since the time is limited and you seem to have a lot of questions, I'm very open. The three appellants that you're hearing from today, plus the three amici to this court, all believe that the decision by the district court on May 28th, 2024, disrupted the status quo ante that was created by this court's Bikes opinion in 2023. In Bikes, this court was very clear about the issue of class membership being limited to people who not only accepted payment cards, but at the same time had standing under Illinois BRIC. That is that they were direct purchasers of the payment services. The issue that you've been talking about, Mr. Rifkin, about payment facilitators, acts as though, or questions as though, the payment facilitator is nothing different than making a call to a delivery service, having somebody show up and pick something up, bring it across town in Manhattan and deliver it to somebody else. But in fact, payment facilitators are independent business model because what wasn't discussed earlier, I believe, is that the cost of the buy-in to be able to use MasterCard or Visa services through their network is expensive. And that small sellers, the square sellers that you've been referring to, are generally very small businesses that cannot financially tap into the Visa and MasterCard system because of the expense involved of setting up an account with a merchant bank. You have to have enough capitalization so that the Visa and MasterCard system understands and believes that you can sustain paybacks into the system. That unlike buying an ice cream cone, somebody might buy a $2,000 watch and then they want to return the watch. And you've already been paid $2,000. You have to have the financial wherewithal to pay that back. And another percentage of what your fee flow through the Visa and MasterCard system is, I first encountered a square seller at a craft show, a guy that made coffee cups and sold them for $10. He could not possibly accept Visa and MasterCard by having a relationship with an acquiring or merchant bank. So with that hole in the system that prevented small businesses like Potter from being able to tap into the Visa and MasterCard system, the payment facilitators such as Square, now Block, and Intuit, because of their huge financial resources, were able to create a new business model whereby they have the direct relationship with the merchant bank and the sub-merchants, the square sellers, as Mr. Ripken mentioned, they don't have any relationship with the merchant bank. They have a sub-account from either Square or Intuit, and when someone purchases from them, that purchase doesn't go into the Visa and MasterCard system. It goes into the payment facilitator system. The payment facilitator, but for them, there would be no transaction at all because of the lack of financial wherewithal of the small seller. So the business or merchant or entity accepts the payment card. That part's true. That sale is run through the Payfax actual hardware and software at the merchant site. Then it goes to the payment facilitator, not to the Visa and MasterCard system, and it's then processed through the payment facilitator's account with the acquiring or merchant bank. Assuming that the acquiring or merchant bank is not the issuing bank for that particular credit card, then the model that you've seen sketched out over time, it goes from the merchant bank through the Visa and MasterCard system to the issuing bank. The issuing bank pays out. Well, first they check to make sure the person has enough credit with regard to the credit card. Then they pay out the amount of money of the sale minus the interchange fee. So the interchange fee never leaves the issuing bank. It goes back to the merchant or acquiring bank. They slap on their fee for being the merchant or acquiring bank, and they send that money to the payment facilitator. The payment facilitator has the software system that then compares the amount of the charge to the amount that they received from the merchant or acquiring bank. They add in whatever the charges for their actual service to the merchant are, and these include all kinds of fees that really don't matter because nobody gets anything for free in the system. So, yes, another nibble from the actual amount of the sale gets taken out at that point, and then the net is sent by the payment facilitator, who actually has the money, to the merchant who accepted the payment card. Okay. Thank you, counsel. We'll hear from counsel from that police now. Good morning, Your Honors. Rosemary Zaney on behalf of Visa and MasterCard. The district court correctly concluded that the settlement class includes merchants that use payment facilitators like Square because the merchants, not the payment facilitators, as you just heard from counsel for the jackrabbit plaintiffs, are the ones that accept cards. Nothing appellants have argued changes that conclusion. The concept of a distinct group of Square sellers that were somehow not merchants for the purposes of the settlement is an invention of the appellants in this case. The parties understood that all merchants were class members, no matter what intermediaries they used to accept payment cards. It's the merchants that accept the cards from the consumers, whether they use a Square reader or other processing equipment to process the transaction. The settlement agreement— Sorry, let me just interject a question. As I understood the arguments of your adversary, counsel, they are saying that the transaction we should be looking at has nothing to do, or at least is something different from the transaction in which a customer buys something from the merchant that sells some kind of goods. The transaction is the purchase from Visa or MasterCard of the right to have a merchant use the MasterCard in sales to its customers. And so, as they characterize it, Square buys from Visa or MasterCard the right to install a Visa or MasterCard apparatus at Square's customers' facilities, the merchants who purchase from— And so, the first purchase is the purchase by Square from Visa or MasterCard of the right of a merchant to use payment cards in sales to its customers, and then it resells that right numerous times to lots of different merchants, making a profit for itself in doing so. Is that a correct characterization of the transaction? Well, I don't agree with their characterization. I do think it's important to distinguish between two issues. One is what defendant's position is with respect to who is the direct purchaser in these litigations, which has always been that the only direct purchaser is the acquiring bank. And to be clear, I did hear counsel suggest that Square itself purchases or pays for interchange fees from Visa or MasterCard, and that is not correct. Just like Visa—Square contracts with an acquirer, and the acquiring bank directly pays the fees. And so, the defendant's position all along, even prior to this class settlement, has been that the acquirer is the only direct payer of the fees. But I do think it's important to note that in settling this case with the merchant class, the parties agreed to not resolve that dispute as between the parties, and to accept that the merchants would be deemed the direct payers. And it is true that the merchants in the case, the class plaintiffs who were bringing this case, did argue that all merchants were the direct purchasers, citing the very same kind of evidence that Your Honors have cited, such as the fact that the interchange fee is deducted from the issuing bank at the initial part of the transaction, for example. So their position was all merchants are the direct purchasers, whether they use a payments facilitator or a third-party processor or any other third-party intermediary. Defendant's position was that no merchants are direct purchasers, only the acquiring bank is the direct purchaser. And in settling that dispute, the parties did not resolve it, but they did reach that understanding that they were settling with all of those merchants who had taken that position in the underlying litigation. I think that's what's clear, what's relevant in terms of understanding what the class was that the parties understood, the class members that the parties understood. So who is the direct purchaser? The direct purchaser is the acquiring bank in all of these instances, whether the merchant's using a payments facilitator or a third-party processor. For purposes of this case, though, and the last time for Fikes, that was not your argument. It was for purposes of settlement. I understand your position that you're not arguing now, was that it was the more direct payer. And in that context, it was, I guess we left it up to the district court and the special master to sort out where there's conflicting evidence. But here, why is Square not like the supplying gas companies? So several reasons, and I think we can start with the class complaint. That's where it's most clear. The class complaint on its face distinguishes between merchants that accept cards and the separate entities which are payment facilitators that are not class members and are not injured. So the complaint defines the class using the same language as the settlement agreement, entities that have accepted payment cards. And it calls those entities merchants and describes the class as a class of millions of merchants. It then separately defines another set of entities, which are the payment facilitators, and then makes a further critical distinction between merchants and payment facilitators, which is it alleges that the merchants were harmed by the allegedly super competitive interchange fees, but that the payment facilitators were not harmed. So paragraph 162 of the complaint, which is in the record at JA8029, states payment facilitators do not pay interchange fees and therefore have not been harmed by the imposition of the fees. So I do think, unlike the situation that was at issue in Fikes between oil companies and their retail gas stations, where it was recognized at the time, there was an open factual question, which, as between those two merchants, was the one that accepted the payment cards. There is no open factual question or ambiguity with respect to payment facilitators. You don't have to go past the class complaint. Are you saying that this argument is barred by the terms of the complaint, that having couched the complaint in a certain fashion, they can't now make arguments that are inconsistent with that? Is that your argument? Not that these claims are barred. I think it's that the class complaint informs the class settlement agreement, and the issue here is who is the class members under the class settlement agreement, and you only need to look at the class complaint to understand who are the entities that are class members under the class settlement agreement. I'll just note that the landing plaintiffs have never attempted to explain this aspect of the complaint. Why would the class plaintiffs have alleged that payment facilitators were not injured if the class plaintiffs believed that payment facilitators were part of their class? Well, why did you not give notice to them if you believed that they were part of the class? Notice was provided to all merchants whether or not they used payment facilitators to accept cards. So the notice process, both the direct notice process and the published notice process, was directed towards all merchants and was a reasonable effort as to all merchants. That sounds different from what your friend just said, in my understanding. Yes, I disagree. I disagree with those representations. And in particular, at least as I understood it, the counsel was arguing that square sellers as a group, as in all merchants that use square, were left out of the notice process, and I don't think the record supports that at all. What the parties are required to do is provide direct notice to all class members who can be identified through reasonable effort, and that was done. The class administrator compiled hundreds of millions of merchant records from MasterCard, Visa, and the largest U.S. payment processors, and the network data that it collected contains information on all merchants, regardless of whether they use payment facilitators or not. I think I also heard counsel represent that the network data does not have data on merchants that use payment facilitators. That is not correct. The network data does have information on all merchants, whether or not they use payment facilitators, and I'll point you in the record to a data analysis done on Visa's data on that issue, which is a JA5594. Now, that data has gotten more robust over time, and the class administrator has been able to identify more merchants today on more updated data than it was able to identify at the time of the class notice, but that doesn't mean that at the time of the class notice there wasn't a reasonable effort to identify class members. Why doesn't the failure to give notice to the square sellers bar the judgment as far as those entities are concerned, bar the resolution of this case as far as those sellers are concerned? So, again, the only evidence that the plaintiffs here presented are as to the eight plaintiffs, the eight landing plaintiffs, and as to them, the evidence is, according to their declarations, they did not receive direct notice, although they have since received claims forms, and I think those facts are explained by the record, which is that the data that was available at the time of claim forms has become more robust over time. So the class administrator conducted an extensive data analysis from many sources to identify merchants at the time of the notice. It identified, I think, an estimated 16 million merchants, all of whom were sent direct notice. Merchants that used payment facilitators were not excluded. You sent notice to all of these merchants, millions and millions of them, but you just got through saying a little while ago that the only direct purchasers were the acquiring banks. Right. So why are you sending notice to millions and millions of people who are not direct purchasers? Didn't you read Illinois BRIC? Because we had compromised our Illinois BRIC defense in order to reach that settlement, and we understood that we were settling with a class of merchants. But I thought you said that the complaint is speaking in terms of the acquiring banks, correct? No, I'm sorry, Your Honor. That is defendant's position, is that the direct purchasers are the acquiring bank. The complaint is clear on its face that it's on behalf of a class of merchants, and the class counsel's position is that the merchants were the direct purchasers. Can I go back to Fikes? So what would you have us say about how that applies here? Why isn't it controlling that the square sellers were indirect, admittedly indirect purchasers or payers, I'm sorry, here? So I think that the Fikes analysis really doesn't even arise in this appeal because what Fikes was addressing was an ascertainability issue, and specifically whether it would be possible to identify the class member as between two merchants where it was ambiguous which of the two merchants accepted the payment cards. But that issue doesn't arise in this appeal because there is no ambiguity here. You don't need to go past the class complaint to know that payment facilitators are not merchants that did not accept the cards. But ambiguity was there in who accepts the card. Is that not the same here? I mean, it kind of seems like when you stick your credit card into a square reader that the square is accepting the credit card. I don't think that ambiguity exists here in the same way. As between two merchants, Fikes did recognize that as applied to two merchants, you could have ambiguity as to who accepted the card. But here, I don't think you can have that ambiguity specifically because of the class complaint. Assuming we buy the two merchants distinction, how does that work its way into the who accepts ambiguity or lack of ambiguity? Why is that an acceptance question? So to be clear, there was no factual record at the time that the court was considering this issue and the parties were debating that issue. So I think what was contemplated is that you could have two merchants where the facts made it truly unclear, which, you know, it's a franchisee, there's a branded operator, who is accepting the card could be unclear. That, I think, is a fundamentally different situation to the third-party intermediaries that exist in every transaction that were clearly not part of the class. So again, in the complaint, the entities that accepted payment cards are defined as merchants. And so when we think about ambiguity, it's specific to the context of that class of merchants. Would you agree that the entity that accepts the card could be different from the direct payer of the payment interchange fee? Interchange fee? So, and again, are you asking is it, so under the class settlement agreement. I don't know how to make the question. Yes, yes, I do agree. Under the class settlement agreement, the entity that's the class member who accepted the payment card could be different from the, from who defendants believe the direct purchaser is outside of the context of the class settlement. Is that a problem for you? I don't think so. I think the purpose of the settlement was to resolve the dispute with the merchant class without having to resolve the party's dispute as to who the direct purchaser was. That was the defense that we compromised in order to reach that settlement. Just to finish up on notice, I know I only have a few minutes, but I did also want to note that the court, of course, did not just rely on the class, did not rely on, cited a raft of evidence that supported the conclusion that merchants accepted payment cards, not payment facilitators, including visas and MasterCard rules, which are cited in the complaint, squares contracts with his merchant customers, and the landing plaintiff's own sworn declarations that they accept payment cards. Can I ask just one more question? Is the question about agency before us, or is that working its way to us? That is not before you. You correctly predict it may be working its way towards you, but the fact that it was alluded to here that payment facilitators are contractual agents of their merchant customers is relevant, in our view, to the lawsuits being brought by Square and Intuit. In particular, we think that the merchants have released claims on behalf of their agents, but that issue is not on appeal here. Are you addressing the appeal of the Omjerica claim? I am not, Your Honor. That's a separate counsel, so unless there's further questions on that, we would ask the court to affirm. Thank you. Thank you, counsel. We'll hear rebuttal first from Mr. Rivkin. Thank you, and I'll try to be brief. Toward the end of counsel's argument, she said that she doesn't think that the same person who accepts a card is necessarily the payer of the challenged fee, and we know that their position has always been that it's the acquiring banks and neither Square nor the Square sellers. But the problem is, and I think Your Honor's question alluded to it, the problem is that in Fikes, this is how the court resolved the question of who accepts the card. Who accepts the card is the direct payer of the fee because, as the district court said, and as this court ruled in Fikes, the settlement has to be interpreted by reference to Illinois BRIC. And so the position that they're taking now is fundamentally, fundamentally inconsistent with the position they took in Fikes, with the position they took before the district court in getting the settlement approved, and you can't have a settlement mean one thing when it's approved but something else when it's enforced. That can't possibly be the standard, but that's exactly what the defendants are arguing for here. What you can have is you can have some billions of dollars paid to a class of people who are not direct purchasers, and then you have the direct purchasers who are not bound by the settlement who can then start their own lawsuit around the corner and spend another 20 years. Except I think, Your Honor, consistent with this court's decision in Fikes, the defendants would rightfully be able to say that if a direct purchaser subsequently brought a lawsuit against Visa and MasterCard, it would be barred by the release in this case because this court has already said the direct purchasers are in the class. Not only are they in the class, but they are the only members of the class. So we understand the dilemma, but the dilemma is of Visa and MasterCard's making because they're now trying to leverage a different settlement into the court. And I do want to say one other thing. We disagree with the allegations in the class complaint, the Third Amendment complaint in this case, that Visa and MasterCard alluded to, paragraphs 161 and 162 of the Third Amendment complaint. The payment facilitators are the only ones. Square is the only one who pays the disputed interchange fee here. We don't pay it at all. We have no relationship with Visa and MasterCard, no relationship with Acquiring Bank. We don't pay an interchange fee at all. And when they said, as between two merchants, Square, the merchant of record, and us, the merchant in the common ordinary sense of the word, as between two merchants, the merchant that is the more direct payer of the interchange fee, that merchant and only that merchant is encompassed in the class definition. We think it defies logic to say that as between Square and the Square sellers, somehow the Square sellers are the more direct payers of a fee they never pay. And that's the dilemma that the changing position has created. Your Honors, with that, I know I'm over my time. If the Court has any other questions, I'm happy to address them. You say of the fee that they never pay. I mean, they suffer the deduction of the fee. They pay that fee to the same extent that Square pays the fee. In the sense that it's built into – It's built in. It reduces the payment that they receive. So you can't say that they never pay because then you'd have to say that Square also never pays. Judging it all in the same sense that the State of Illinois paid for the overpriced cement that was used to make the bricks that went into the building, in the same way that the utility paid for the price-fixing, the overcharge from the price-fixing for utility purchases in the Utility Corp case that I mentioned before. Yes, absolutely. The Square sellers are the ultimate payer. And fortunately for us, 30 states have given them a remedy by enacting repealer statutes that fix the problem that Illinois brick creates, which is that the Supreme Court has said now a dozen times, this is as far as we go. We go no farther than the direct payer of the disputed fee. We don't look to see who the ultimate payer is. What is the service or product that is affected by the antitrust behavior in this case? Payment card transactions. Thank you. Are you saying that the Supreme Court used the term direct payer or direct purchaser? I believe they used the term direct purchaser, but I believe in Apple the Court used the phrase the party that directly pays the fee. The case in Apple is one that I'm familiar with. It's actually my case. And we represent a group of consumers who buy apps and make in-app purchases on the App Store. And we pay our money to Apple. And Apple says it is just an intermediary. It is only acting as the agent for the app developers who sell apps and who sell in-app content to consumers, my clients, to consumers on the App Store. And so Apple said in the Supreme Court that they are merely a conduit, an intermediary. And the Court said nonsense. They go to the App Store where you make them go. They buy apps from you. They make in-app purchases on the App Store from you. The money goes from them to you. They're the direct purchaser. That's as far as Illinois BRIC lets us go. We don't try to unscramble the transaction behind that exchange. And, Your Honor, it's been the consistent bright-line policy of the Supreme Court to look at the flow of funds. And here the flow of funds, the more direct payer of the fee, the flow of funds goes through Square. Yes, we agree that the Square sellers ultimately bear the load, but under Illinois BRIC they don't have a direct Sherman Act claim. But you acknowledged in answer to one of my questions earlier that if that direct payer were merely an agent who had been established as a facilitator to make the payment on behalf of the user of the card payment facility, that that would be different. If the function of the agency was such that the money simply went from, and let's just take an example, the money went from the merchant to an aggregator who then passed that money on to the network in some form or another. And the way, obviously, we all know the way it works. The way it works is in reverse. The money comes through the facilitator. But Square is only an agent of the Square sellers for the limited purpose of collecting money and passing it on. That's it. They don't do anything else. And that's why they're the merchant of record. And the transaction data that Visa and MasterCard collects is Square's. And that's what the record establishes. On the notice point, I want to say we raised this issue in the district court. We made the same claim here, the same claim in the district court that we made here. We showed that none of the Square sellers received notice. That's not in dispute. And we said in the district court that the Square sellers in total, about 4 million of them, didn't receive notice. And Visa and MasterCard did not respond to that with a single piece of evidence, not a single affidavit from a claims administrator, not a single affidavit from plaintiff's counsel. Submitted briefs in the district court. They did not say, yes, they did receive the notice. The record is entirely devoid of any opposition to the assertion that the Square sellers in total, not just these eight plaintiffs, but the Square sellers in total, did not receive notice until 2024 when they got claim forms. Okay, counsel. Thank you. Thank you, Your Honor. Mr. Beckrath, you have two minutes. Well, Judge Jacobs and Judge LaValle have asked about doesn't the merchant at the end of the chain pay the interchange fee overcharge? Aren't they the person that's really affected? And in a non-legal sense, that's probably a true statement. But you have to go back and remember that Hannaford Shoe and Illinois Brick are the two sides of one issue, which is antitrust damages. Do we go past the first purchaser or the first seller so that there could be a defense in Hannaford Shoe that the shoe manufacturer passed on the overcharge of the equipment to the people they sold shoes to? And in Illinois Brick, going in the other direction, that the people who purchased the brick obviously passed on the overcharge to the state of Illinois. But under the Supreme Court's jurisprudence, we don't look at the pass-along or pass-through of the antitrust damages. We stop at the first person. So with regard to the case before you and the issue of whether or not the payment facilitators who have independent class actions against Visa and MasterCard, that the payment facilitators are the direct payers of the interchange fee. And whether or not they pass along that payment to the square sellers is irrelevant for antitrust analysis. So the only issue for this court really to decide is whether or not merchants who do not have a direct relationship with the Visa and MasterCard system, Mr. Berrifkin's clients, are class members. And they're just not under your decision in fights. My client, Jack Rabbit, is in a similar but different situation. He has a contract with his BP distributor, Superior Oil. And pursuant to that contract, Jack pays the interchange fee as part of a cost-plus contract that he has with his distributor. No one has argued today, either on the Visa and MasterCard side or Mr. Berrifkin, that the square sellers have cost-plus contracts with their payment facilitators. So under the Illinois BRIC, there's really only a small set of exceptions that they allow. One of them is my client's exception of being a cost-plus direct purchaser. The other exception would be that if you looked at Visa and MasterCard in terms of their whole system as co-conspirators with regard to the antitrust violation, then their position that the acquiring bank is the injured party would go away. And it would be the direct purchaser of the services from Visa and MasterCard. That's my client. It's not Mr. Berrifkin's client. And the reason we got involved in the second appeal is that the class as you defined it in fights consisted of merchants who accepted payment cards and were direct payers or direct purchasers of the services through Visa and MasterCard, including the payment of the direct payer of the interchange fee. What the district court did in May of 2024 was to do away with being a direct purchaser. It's not in that order. Instead, what the district court said was, well, courts interpret settlement agreements as contracts all the time. That's because they're contracts. And so in interpreting this contract, I looked at what the word accepted meant. And the word accepted has these meanings in the dictionary. And so since the settlement says that they accepted payment cards, I'm done. But that's not what you said as a panel. You said accepted payment cards and would have had antitrust standing. Antitrust standing has not only limited to the main plaintiffs in the underlying lawsuit against payment cards, but pursuant to Supreme Court precedent, every member of the class has to independently have antitrust damages and thereby have Article 3 standing. Okay. Thank you, Mr. Pecoraro. Thank you all. We'll take the matter under advisement. The next argument will be in case number 24-26-78, Old Jericho Enterprise, Inc. versus Visa and MasterCard. Mr. Pecoraro. Mr. Bateman. Yes. Thank you. Good morning. Christopher Bateman on behalf of the Old Jericho plaintiffs. May it please the Court. I'd like to start by picking up with one thing that defense counsel just said, which we agree with, which is it's correct that this court's ruling in Fikes addressed an ascertainability problem between two sets of merchants. And one was branded gas retailers and the other was gas brands. And the issue was that the branded gas retailers argued that they were the ones who accepted the card within the meaning of the settlement because they physically handled the card from the cardholder, while the gas brands were the ones who contracted with the acquiring rank and provided processing services. Now, as counsel accurately said, there was no factual record presented at that point on the Fikes appeal, but that was the understanding that the court had as to the arguments of the parties. And this court in Fikes resolved that ascertainability issue, the question of which of these two merchants accepted the card within the meaning of the class definition by holding that it was the direct payer of the challenged fees. And that was consistent with what the settling parties said all along throughout the settlement approval process. And that's where something that defense counsel said just now is incorrect because she suggested that the parties understood that the merchants who take the card from the cardholder is what the parties intended. But that's not what the settling parties said about what they meant under the settlement. As Mr. Shammigan himself told this court at the Fikes hearing, quote, the party that has accepted the card is the party that transacts with and pays the relevant fee to the acquiring bank or processor, unquote. And that's from page 1903 of the joint appendix. And class counsel said the exact same thing. They said that the direct payer was the only entity that they represented in the card processing chain. And they defined that as, quote, the first payer who is closest to the network, unquote, and who, quote, accepts the network's rules, unquote. And that's from page 1898 of the joint appendix. And in fact, class counsel specifically rejected the idea that the party that physically handles the card is who accepts the card within the meaning of the settlement. Physical card handling was, again, the test that the Fikes objectors, the brand of gas retailers, offered for why they were, in their view, the party that accepted the card. And here's what class counsel told this court at the Fikes hearing about that argument. Quote, and what Fikes does is they point to the transaction where the customer presents the card to the gas station.